*To Be Argued By Michael H. Sussman*

# 13-4328-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

--------------------------------------------

WAYNE BRYANT,

*Plaintiff-Appellant,*

v.

VILLAGE OF GREENWOOD LAKE, ANTHONY DASILVA

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the United States District Court**
**For the Southern District of New York**

---

### APPELLANT'S BRIEF-IN-CHIEF AND SPECIAL APPENDIX

---

Michael H. Sussman
SUSSMAN & WATKINS
P.O. Box 1005
1 Railroad Avenue, Ste. 3
Goshen, New York 10924
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………... ii·

STATEMENT OF JURISDICTION……………………………….......... 1

STATEMENT OF ISSUES PRESENTED……………………………... 1

STATEMENT OF THE CASE……………………………………….... 2

STATEMENT OF FACTS…………………………………………… 3

    A. Predicate for the Bench Warrant…………………………….... 3

    B. Bryant's Traffic Stop and Arrest…………………………….... 4

SUMMARY OF ARGUMENT…………………………………….... 8

STANDARD OF REVIEW……………………………………….... 11

ARGUMENT………………………………………………………... 12

POINT I
IN LIGHT OF THE SUPREME COURT'S HOLDING IN ARIZONA v.
GANT, THE VEHICLE INVENTORY EXCEPTION TO THE
WARRANT REQUIREMENT IS NOT A VALID BASIS FOR
SEARCHING AN ARRESTEE'S VEHICLE…………………………… 12

POINT II
THE RECORD CONTAINS SUFFICIENT EVIDENCE FROM WHICH
A REASONABLE JURY COULD FIND THAT DASILVA'S
WARRANTLESS "INVENTORY" SEARCH OF BRYANT'S
VEHICLE WAS UNREASONABLE AND, THUS,
UNCONSTITUTIONAL…………………………………………….. 24

CONCLUSION……………………………………………………... 29

CERTIFICATE OF COMPLIANCE…………………………………... 30

SPECIAL APPENDIX……………………………………………… SA-1

i

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)……………………………………………… 11

Anobile v. Pelligrino,
    303 F.3d 107 (2d Cir. 2002)……………………………………… 25

Arizona v. Gant,
    551 U.S. 332 (2009)……………………………………………… 12-14,16-18, 21-23

Carroll v. County of Monroe,
    712 F.3d 649 (2d Cir. 2013)……………………………………… 24

Chimel v. California,
    395 U.S. 752 (1969)……………………………………………… 13, 14

Colorado v. Bertine,
    479 U.S. 367 (1987)……………………………………………… 16, 18, 25

Coolidge v New Hampshire,
    403 U.S. 443 (1971)……………………………………………… 21

Danzer v. Norden Systems, Inc.,
    151 F.3d 50 (2d Cir. 1998)……………………………………... 11

Florida v. Wells,
    495 U.S. 1 (1990)………………………………………………… 16, 17, 25

Holcomb v. Iona College,
    521 F.3d 130 (2d Cir. 2008)……………………………………… 11

Katz v. United States,
    389 U.S. 347 (1967)……………………………………………… 12

Maryland v. Buie,
    494 U.S. 325 (1990)……………………………………………… 23

McCardle v. Haddad,
        131 F.3d 43 (2d Cir. 1997)……………………………………  25

Michigan v. Long,
        463 U.S. 1032 (1983)………………………………………..  23

New York v. Belton,
        453 U.S. 454 (1981)………………………………………  13, 14, 16

People v. Gomez,
        13 N.Y.3d 6 (2003)………………………………………..  26, 27

People v. Johnson,
        1 N.Y.3d 252 (2003)………………………………………  26

Ruggiero v. Krzeminski,
        928 F.2d 558 (2d Cir. 1991)……………………………...  24

South Dakota v. Opperman,
        428 U.S. 364 (1976)………………………………………  15-16, 18-21

Terry v. Ohio,
        392 U.S. 1 (1968)…………………………………………  19, 23

Tierney v. Davidson,
        133 F.3d 189 (2d Cir. 1998)………………………………  24

Tirreno v. Mott,
        375 Fed.Appx. 140 (2d Cir. 2010)………………………...  24

United States v. Ortiz,
        422 U.S. 891 (1975)………………………………………  21

United States v. Ross,
        456 U.S. 798 (1982)………………………………………  23

**Statutes**

28 U.S.C. § 1291……………………………………………………………... 1

28 U.S.C. § 1331……………………………………………………………... 1

28 U.S.C. § 1343(a) ………………………………………………………… 1

42 U.S.C. § 1983……………………………………………………………... 1

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(a)………………………………………………............. 11

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

As Bryant alleged that Dasilva violated his Fourth and Fourteenth Amendment rights, as made actionable by 42 U.S.C. § 1983 , the district court below had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. §§ 1983 and 1988.

After the matter was settled as to the Village of Greenwood Lake, on November 6, 2013, the district court granted summary judgment to Dasilva, and, on November 7, 2013, the Clerk entered judgment, constituting a final order, Bryant timely filed his Notice of Appeal on November 13, 2013. Thus, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

(1)  Whether a vehicle inventory search remains a valid exception to the warrant requirement after the United States Supreme Court's holding in <u>Arizona v. Gant</u>, 556 U.S. 332 (2009), where the subject vehicle is searched after its only occupant's arrest.

(2) Whether the defendant in a civil action under 42 U.S.C. § 1983 alleging unlawful search or seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution bears the burden of proof to establish that a

warrantless search is reasonable as a valid vehicle inventory search and, if so, whether Dasilva satisfied that burden as a matter of law in this case.

## STATEMENT OF THE CASE

This appeal arises from the district court's November 6, 2013 Opinion and Order granting defendant-appellee ANTHONY DASILVA summary judgment and dismissing plaintiff-appellant WAYNE BRYANT'S Fourth Amendment claim against him.

Bryant commenced this action on November 1, 2011 against the Village of Greenwood Lake and New York State Trooper Dasilva. The complaint alleged that the Village negligently failed to record Bryant's payment in full of a fine for a traffic violation and, thus, errantly issued a bench warrant for his arrest. Bryant also alleged that Dasilva violated his Fourth Amendment rights when, arresting Bryant pursuant to the erroneous bench warrant, he searched Bryant's vehicle without a warrant or other permissible basis for doing so. The Village settled Bryant's claim and, accordingly, the suit against it was dismissed. Only Bryant's Fourth Amendment claim against Dasilva remains.

By Opinion and Order dated November 6, 2013, the District Court for the Southern District of New York (Hon. Edgardo Ramos, U.S.D.J.) granted Dasilva's motion for summary judgment and dismissed Bryant's Fourth Amendment claim.

In doing so, the district court rejected Bryant's contention that Dasilva's

2

roadside search of his vehicle - done after stopping him for an alleged traffic violation, arresting him, the sole occupant, on a bench warrant for putatively failing to pay a prior fine and securing him in patrol car - was unconstitutional under the United States Supreme Court's holding in <u>Arizona v. Gant</u>, 556 U.S. 332 (2009).

Rather, the district court accepted Dasilva's position that he conducted a vehicle inventory search pursuant to New York State Police policy and not a search incident to Bryant's lawful arrest. Reasoning that <u>Gant</u> applies only to the search incident to arrest exception to the warrant requirement and leaves other warrant exceptions intact, the district court concluded that Dasilva's warrantless vehicle inventory search of Bryant's car was reasonable and, thus, constitutional.

## STATEMENT OF FACTS

### A. <u>Predicate for the Bench Warrant</u>

Bryant appeared before the Village Justice Court, Hon. Nancy D'Angelo, to answer a traffic ticket he had received on or about June 14, 2010. In resolution of the ticket, Bryant agreed to plead guilty to a non-moving violation and was fined two hundred thirty-five dollars ($235.00). The Justice Court provided plaintiff until December 14, 2010 to pay the fine in full (JA-146).

On December 14, 2010, Bryant called the Justice Court to advise he wanted to pay the fine that day and to determine whether he could come in person to do so.

The Justice Court personnel who fielded Bryant's call advised him that he could pay the fine any time that day, so long as he did so before the court closed.

Thus, Bryant visited the Justice Court later that day, December 14, 2010, and, at or about 3:50 p.m., using his bank debit card, paid the $235.00 fine in full (JA-147). His bank account had sufficient funds to cover the amount of the fine and, indeed, the payment was processed in the ordinary course of business. He received two receipts upon paying the fine – a printed credit card sale receipt and a handwritten cash receipt (Id.).[1]

After paying the fine in person on December 14, 2010, plaintiff left the Justice Court with the understanding that the matter had been completely resolved and no one at the Court indicated anything to the contrary. However, notwithstanding Bryant's compliance, and unbeknownst to him, the Justice Court issued, and did not recall, a bench warrant for Bryant's arrest for failure to pay the fine (JA-43).

### B. Bryant's Traffic Stop and Arrest

On or about December 20, 2010, at approximately 4:00 pm, while Bryant was driving on Interstate 84 in the Town of Montgomery, New York State Trooper Anthony Dasilva pulled Bryant over for failure to where a seat belt (JA-84-86).

---

[1] The printed credit card sale receipt indicates that payment was made on December 14, 2010 at 15:50:26 (3:50:26pm). The handwritten cash receipt bears a date of either "12-14-10" or "12-15-10" – the "4" and "5" of the day portion of the date are written over each other and it is not clear from the face of the receipt whether "15" replaced "14" or whether "14" replaced "15" (JA-147).

4

DaSilva requested Bryant's license and registration and Bryant complied (JA-87-88). Dasilva returned to his vehicle and, while Bryant was still in his own car, discovered an active bench warrant for Bryant's, which required him to arrest and seize Bryant (JA-90-92).

Having learned that Bryant had an outstanding warrant from the Village of Greenwood Lake, Dasilva approached and advised Bryant that he was going to take him into custody (JA-97). Dasilva told Bryant, "Your license is suspended" (JA-119). Bryant advised that he had cleared the matter up, looked in his glove compartment for any confirming paperwork, but was unable to find the papers from the Justice Court (JA-98-99).

Bryant then complied with Dasilva's command to exit his vehicle (JA-100). After Bryant exited, Dasilva placed him in handcuffs and led him to his patrol car (JA-100-01). Bryant explained to Dasilva that he had paid the fine in full and that the receipts for such payment were in the glove compartment of his vehicle. DaSilva brought Bryant back to the vehicle and showed him the documents he had found in the glove compartment. Bryant denies this sequence and claims that once he was placed in the patrol car, Dasilva asked him again only for his driver's license. Dasilva allowed plaintiff to locate this in his car. Plaintiff did so and again gave his license to Dasilva (JA-121-24).

With that, Bryant was brought back again to the patrol car and placed inside. Dasilva then shut the door to the patrol car (JA-122). Inside the vehicle, Bryant sat, handcuffed behind his back (Id.).

Having concluded that he needed to arrest plaintiff, Dasilva called for a tow truck (JA-93). Before the arrival of the tow truck operator, Dasilva "inventoried" or "wrote down the contents of" the front seat, the rear seat, the glove box and console (JA-94, JA-126). Dasilva also searched the vehicle's trunk (JA-95). This search or inventory lasted 15 minutes, from 4:30 to 4:45 p.m. (JA-96).

During the inventory search, plaintiff was not within "grabbing" distance of his vehicle, but, rather, secured in Dasilva's patrol car (JA-103). Bryant was seated in the back of the vehicle while Dasilva conducted the inventory search (JA-105). The back doors of the patrol car could not be opened from the inside (JA-103-04). Plaintiff watched as defendant Dasilva searched his car, including the trunk (JA-127).

At the time Dasilva searched plaintiff's vehicle, he did not have a warrant to do so and did not ask plaintiff's consent to conduct a search (JA-107, JA-127). At the time Dasilva commenced searching plaintiff's vehicle, he did not have probable cause or reasonable suspicion to believe that there was evidence of any crime inside that vehicle or any criminality afoot (JA-107-08). During Dasilva's search of

plaintiff's vehicle, he found a bottle containing pills of Tylenol with Codeine and Hydrocodone, for which plaintiff had a valid and lawful prescription (JA-107-08).

Despite the fact that plaintiff informed Dasilva that he possessed a valid and lawful prescription for the pills (JA-130-32), Dasilva charged Bryant, by information, for the Class A misdemeanor offense of possession of a controlled substance in the seventh degree [PL § 220.03]. Dasilva also wrote plaintiff tickets for failure to wear a seatbelt [VTL § 1229-C(3)] and for possessing a controlled substance in other than its original container [PHL § 3345] (JA-39-42, JA-44, JA-135-37).

On or about January 11, 2011, before the Justice Court of the Town of Montgomery, the seat belt and original container charges were dismissed and plaintiff pleaded guilty to a violation of a parking violation [VTL § 1201(a)] in resolution of the possession charge. [Bryant at 81]. Plaintiff paid a fine of one hundred forty dollars ($140.00).

After Dasilva finished searching plaintiff's vehicle, the tow-truck arrived and took plaintiff's vehicle away. Dasilva then transported plaintiff to the State Police barracks in the Town of Wallkill, where plaintiff was fingerprinted and photographed (JA-109).

## SUMMARY OF ARGUMENT

In <u>Arizona v. Gant</u>, the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." <u>See</u> 556 U.S. 332, 351 (2009). The district court below held that <u>Gant</u> is inapplicable to this case because Dasilva searched Bryant's car, not incident to Bryant's arrest, but as a vehicle inventory search, a separate exception to the warrant requirement allegedly left unaffected by <u>Gant</u>.

The district court's holding is untenable in light of <u>Gant</u> because the vehicle inventory search exception swallows the rule of <u>Gant</u> entirely and allows the police to circumvent the strictures of the Fourth Amendment as clarified in that case. In other words, when the police are entitled to "inventory" an arrestee's vehicle and use against the arrestee any contraband discovered during that inventory, <u>Gant's</u> holding is rendered meaningless.

Although the inventory exception may be a "well-established" exception to the warrant requirement in that it has endured several decades and is widely applied, its rationale is not indubitable. Indeed, its justifications, consistently challenged over the years by dissenting Justices, arose from a careful balancing of the governmental interests involved against the generally accepted diminished expectation of privacy

8

in one's automobile. But <u>Gant</u>, in curtailing the previously-applicable rule of <u>New</u> <u>York v. Belton</u>, 453 U.S. 454 (1981) which permitted wholesale vehicle searches incident to arrest with no limitations, added weight to the latter side of the scale. In light of this re-balancing and the import of <u>Gant's</u> essential holding, a warrantless vehicle inventory search can no longer logically be considered a "reasonable" intrusion into a citizen's constitutionally protected sphere of privacy.

The district court below observed that <u>Gant</u> applies only to searches incident to a lawful arrest of a vehicle's recent occupant and explicitly left intact other warrant exceptions. But a careful reading of <u>Gant</u> reveals that the Supreme Court meant to leave intact only those other exceptions that apply where the exigencies of an arrest are present or where the police are able to articulate some level of suspicion as to inherent danger or the presence of evidence. Broad-based vehicle inventory searches involve none of these exigencies or suspicions and, thus, should not survive under <u>Gant's</u> caveat.

This Court should interpret <u>Gant</u> as implicitly vitiating the vehicle inventory exception to the warrant requirement and, accordingly, reverse and vacate the district court's judgment below.

If the court is unwilling to read and apply <u>Gant</u> as Bryant proposes, reversal is nevertheless warranted because Dasilva failed to meet his burden of proving, as a

9

matter of law, that he conducted a valid vehicle inventory search sufficient to overcome the warrant requirement.

Should the Court adopt this approach, it would hold that, as an exception to the warrant requirement, vehicle inventory searches are reasonable, and, therefore, valid, only when conducted in compliance with standardized police care-taking procedures. As the district court below observed, this Court has ruled inconsistently on the issue of which party in a civil action bears the burden of proof as to the reasonableness of a warrantless search. In one line of cases, it places the burden of proving the search was unreasonable on the plaintiff and, in another line, upon the defendant to prove the search was reasonable. The district court did not address this issue, instead concluding that Dasilva's conduct was reasonable as a matter of law regardless of who has the burden of proof.

This Court need not reach this issue either because the record here does not demonstrate, as a matter of law, that Dasilva's search complied with standardized department care-taking procedures. Indeed, there remain questions of fact on this record that preclude the granting of summary judgment. Thus, the district court's judgment should be reversed.

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment <u>de novo</u>. <u>See</u> <u>Holcomb v. Iona College</u>, 521 F.3d 130, 137 (2d Cir. 2008).  Summary judgment is appropriate only where the moving party establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A fact is material if its resolution could affect the outcome of the suit and a dispute is genuine if reasonable minds may differ as to its resolution. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).    If a reasonable jury could return a verdict for the non-moving party, then summary judgment is inappropriate and the court must deny the motion. <u>See</u> <u>Id.</u> at 250.

The court must view the record in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in [its] favor." <u>See</u> <u>Holcomb</u>, 521 F.3d at 137.  The court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>See</u> <u>Anderson</u>, 477 U.S. at 249.  Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ." <u>Id.</u> at 255.  And "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." <u>See</u> <u>Danzer v. Norden Systems, Inc.</u>, 151 F.3d 50, 54 (2d Cir. 1998).

11

## ARGUMENT

## POINT I

### IN LIGHT OF THE SUPREME COURT'S HOLDING IN *ARIZONA v. GANT,* THE VEHICLE INVENTORY EXCEPTION TO THE WARRANT REQUIREMENT IS NOT A VALID BASIS FOR SEARCHING AN ARRESTEE'S VEHICLE.

The primary legal issue on this appeal is whether the vehicle inventory exception to the warrant requirement with respect to the search of an arrestee's vehicle survives the Supreme Court's holding in Arizona v. Gant, 551 U.S. 332 (2009). Since the vehicle inventory exception swallows the rule of Gant entirely and permits the police to circumvent the strictures of the Fourth Amendment as clarified in that case, the Court should interpret Gant as implicitly vitiating the vehicle inventory exception and reverse the district court's judgment below.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend IV. It is beyond cavil that "warrantless searches are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). This case involves two of those exceptions – the exception for searches

12

incident to a lawful arrest and the exception for searches conducted as a vehicle inventory under standardized police caretaking procedures.

In <u>Gant</u>, the Supreme Court addressed the search incident to arrest exception as applied to the context of automobiles. <u>See</u> <u>Gant</u>, 556 U.S. at 335. Specifically, the Court addressed the scope of the exception as set forth in <u>Chimel v. California</u>, 395 U.S. 752 (1969) and extended to the automobile context in <u>New York v. Belton</u>, 453 U.S. 454 (1981). <u>See</u> <u>Id.</u>

In <u>Chimel</u>, the Court held that, when making an arrest, the police may, as an incident of that arrest, conduct a warrantless search of "the arrestee's person and the 'area within his immediate control' – construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." <u>Chimel</u>, 395 U.S. at 763. This rule is justified "by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime – things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." <u>See</u> <u>Id.</u> at 764.

In <u>Belton</u>, the Court construed <u>Chimel's</u> definition of the "area within an arrestee's immediate control," as including the passenger compartment of his vehicle, when the arrestee was a recent occupant of that vehicle. <u>See</u> <u>Belton</u>, 453 U.S. at 460. Thus, the <u>Belton</u> Court held: "[W]hen a policeman has made a lawful

13

custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Belton, 453 U.S. at 460. This rule also permitted the police to search any containers found within the passenger compartment. See Id.

In Gant, the Supreme Court found Belton's scope too broad because it did not properly account for the justifications underlying the holding in Chimel. See Gant, 556 U.S. at 335. "The safety and evidentiary justifications underlying Chimel's reaching-distance rule determine Belton's scope." Id. Indeed, Chimel's limitation "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." Id. at 339.

But, under the broad reading of Belton, which the Court found predominated in the lower courts, "a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search." Id. at 343. Thus, the Court rejected Belton's broad reading and held: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Id. at 351.

The other exception to the warrant requirement relevant to this proceeding is the exception for searches conducted as a vehicle inventory under standardized police caretaking procedures. In South Dakota v. Opperman, 428 U.S. 364 (1976) the Supreme Court held that it is not unreasonable under the Fourth Amendment for police to conduct a warrantless search of an impounded vehicle to inventory its contents. See Opperman, 428 U.S. at 376. The Court explained that this rule is justified by "three distinct needs: [(1)] the protection of the owner's property while it remains in police custody . . .; [(2)] the protection [of] the police against claims or disputes over lost or stolen property . . .; and [(3)] the protection of the police from potential danger . . . ." See Id. at 369.

In declaring such inventories reasonable, the Court also relied on the notion, developed by earlier precedent, that automobiles may generally be subjected to greater intrusions under the Fourth Amendment than a home or office. See Id. at 367. As the Court explained, this distinction has arisen because (1) "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, [makes] rigorous enforcement of the warrant requirement [] impossible" and (2) the "pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements," and "the obviously public nature of automobile travel," creates a lower expectation of privacy in one's automobile. Id.

15

Thus, Opperman's holding resulted from the Court's balancing of the governmental interests such inventories are designed to serve against the generally accepted diminished expectation of privacy in an automobile. See Id.; Colorado v. Bertine, 479 U.S. 367, 372 (1987).   Under Opperman and its progeny, the police could conduct a warrantless inventory of vehicles lawfully in police custody, so long as the inventory is conducted pursuant to standardized caretaking procedures "designed to produce an inventory" and "not [] used as a ruse for general rummaging in order to discover incriminating evidence." See Florida v. Wells, 495 U.S. 1, 4 (1990) (holding warrantless search of a closed container found during purported vehicle inventory unconstitutional where police agency had no policy with respect to closed containers and, thus, the search was not sufficiently regulated).

Comparing the search incident to arrest exception with the vehicle inventory exception, it becomes readily apparent that Gant implicitly changed the landscape for the latter.  Prior to Gant, under the rule of Belton, after making an arrest, the police could search an arrestee' *entire* vehicle, including closed containers found therein. See Belton, 454 U.S. at 460.  Thus, a later inventory search of the same vehicle carried no constitutional significance.

But Gant has significantly curtailed vehicle searches incident to arrest, and for important Fourth Amendment reasons:

> It is particularly significant that Belton searches authorize police officers to search not just the passenger

16

compartment but every purse, briefcase, or other container within that space. A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. ***Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment – the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.***

Gant, 556 U.S. at 345 (emphasis added). Moreover, the Court concluded:

Construing Belton broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis. . . . [W]e are unpersuaded . . . that a broad reading of Belton would meaningfully further law enforcement interests and justify a substantial intrusion on individuals' privacy.

Id. at 347.

Thus, Gant's essential holding represents more than just a curtailment of Belton's excessively broad scope; it reflects, and is ultimately premised upon, the strong privacy interests at stake.

But under the vehicle inventory exception, the police are able to achieve the same result as a search incident to arrest simply by adopting a "standardized policy" permitting a broad inventory search of all areas of the vehicle, including closed containers, labeling the same an "inventory," and requiring that an inventory record be produced. See Wells, 495 U.S. at 4. And any contraband or other evidence

17

discovered during this "inventory" search can be later used against the arrestee to the same extent as if discovered during an investigatory search. See Bertine, 479 U.S. at 369.

Thus, the vehicle inventory exception allows the police to circumvent the strictures of the Fourth Amendment as contemplated by Gant, rendering the Court's holding in that case nigh meaningless. This perverse result, enabled by mere semantics, treads upon the very Fourth Amendment interests with which Gant was concerned. Certainly the Fourth Amendment does not countenance such sophistry.

Although the vehicle inventory exception is generally considered "well established" in that it has endured several decades and is widely applied, its rationale, especially in the context of an arrest, is not indubitable. In this regard it is noteworthy that Opperman, which solidified the exception on the basis of its tripartite justifications of protecting the vehicle owner's valuables, preventing false claims against the police and protecting the police from danger, involved an *abandoned* vehicle, not one impounded subsequent to the arrest of its owner. See Opperman, 364 U.S. at 375.

The Opperman Court also emphasized that the determination of the reasonableness of a search under the Fourth Amendment "depends upon the facts and circumstances of each case." Id. Among the facts relevant to the determination of that case, the Court noted:

18

> The inventory was conducted only after the car had been
> impounded for multiple parking violations. The owner,
> having left his car illegally parked for an extended period,
> and thus subject to impoundment, was not present to make
> other arrangements for the safekeeping of his belongings.
> The inventory itself was prompted by the presence in plain
> view of a number of valuables inside the car.

Id. at 375-76. Thus, while one could potentially accept the Court's justifications in the narrow factual setting presented by that case, the same logic does not necessarily apply in every scenario.

But outside of this context, Opperman is not persuasive. One need look no further than Justice Marshall's apt dissent in that case to understand why. See Id. at 384-95 (Marshall, J., dissenting). Without restating here all of Justice Marshall's reasoning, a few points are worth noting. First, Justice Marshall demonstrated that the three-prong justification offered by the majority in support of vehicle inventory searches does not logically, or constitutionally, justify the resulting intrusion. With respect to the police safety prong, Justice Marshall opined:

> [W]hile the safety rationale may not be entirely discounted
> when it is actually relied upon, it surely cannot justify the
> search of ever car upon the basis of undifferentiated
> possibility of harm; on the contrary, such an intrusion
> could ordinarily be justified only in those individual cases
> where the officer's inspection was prompted by specific
> circumstances indicating the possibility of a particular
> danger."

Id. at 389-90 (citing Terry v. Ohio, 392 U.S. 1, 21, 27 (1968)).

19

With respect to the false claims justification, Justice Marshall pointed out the obvious – "[I]t may way well be doubted that an inventory procedure would . . . work significantly to minimize the frustrations of false claims." Id. at 391.[2]   And with respect to the protection of property justification, Justice Marshall aptly noted:

> It is at least clear that an owner might prohibit the police from executing a protective search of his impounded car, since by hypothesis the inventory is conducted for the owner's benefit.  Moreover, it is obvious that not everyone whose car is impounded would want it to be searched. Respondent himself proves this; but one need not carry contraband to prefer that the police not examine one's private possessions.  ***Indeed, that preference is the premise of the Fourth Amendment.***

Id. at 392-93 (emphasis added).

In addition to demonstrating that the weakness of the governmental interests purportedly touted by the majority, Justice Marshall's dissent also points out the Court's underestimation of the expectation of privacy in one's automobile. See Id. at 386. Recognizing that precedent cited by the majority suggests a Fourth Amendment distinction between one's home and one's car, Justice Marshall pointed out that "the reasons for distinction in those cases are not present here." See Id.

---

[2] Indeed, Justice Powell, who concurred in the Court's judgment, noted the utter irrationality of this justification, stating: "It is not clear . . . that inventories are a completely effective means of discouraging false claims, since there remains the possibility of accompanying such claims with an assertion that an item was stolen prior to the inventory or was intentionally omitted from the police records." See Opperman, 428 U.S. at 378-79 (Powell, J., concurring).

"The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Id. at 387 (quoting Coolidge v New Hampshire, 403 U.S. 443, 461 (1971)). "Thus, we have recognized that 'a search, even of an automobile, is a substantial invasion of privacy." Id. (quoting United States v. Ortiz, 422 U.S. 891 (1975)).

In the end, Justice Marshall's dissent establishes that, in finding broad-based warrantless vehicle inventory searches reasonable, the majority in Opperman misbalanced the Fourth Amendment scale. The Court's holding Gant served to vindicate Justice Marshall's dissent and to tip that balance further in favor of a vehicle owner's legitimate expectation of privacy. Thus, in light of the flimsy reed upon which the vehicle inventory exception rests and Gant's rebalancing of interests in the context of vehicular searches, a warrantless vehicle inventory search can no longer logically be considered a "reasonable" intrusion into a citizen's constitutional protected sphere of privacy.

In rejecting Bryant's argument below and holding that Gant did not affect the inventory search conducted in this case, the district court held that "Gant was focused exclusively on the exception for warrantless searches incident to arrest" and that the vehicle inventory exception "continues to apply to vehicle searches" (SA-5). Specifically, the district court found that Gant "explicitly acknowledges the possibility that alternative exceptions may still apply in a given case" (Id.).

21

To be sure, <u>Gant</u> qualified its holding, stating: "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." <u>See</u> <u>Gant</u>, 556 U.S. at 351. But a careful reading of the case reveals that, in referring to other exceptions to the warrant requirement, the Supreme Court meant to leave intact only those other exceptions that apply where the exigencies of an arrest are present or where the police are able to articulate some level of suspicion as to inherent danger or the presence of destructible evidence.

Indeed, the qualification as stated in the summary of the Court's holding must be read in light of its earlier discussion of other warrant exceptions. The Court addressed the issue of other warrant exceptions in response to the State's contention that <u>Belton's</u> broad rule was necessary to "protect law enforcement safety and evidentiary interests." <u>See</u> <u>Id.</u> at 346. Rejecting this argument, the Court explained:

> Under our view, <u>Belton</u> and <u>Thornton</u> permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest. Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances ***when safety or evidentiary concerns demand.***

<u>Id.</u> (emphasis added). The Court then cited specific examples, which, again, highlight the emergent circumstances incident to the arrest context rendering the exceptions reasonable in that context:

> For instance, <u>Michigan v. Long</u>, 463 U.S. 1032, 103 S.Ct.
> 3469, 77 L.Ed.2d 1201 (1983), permits an officer to search
> a vehicle's passenger compartment when he has
> reasonable suspicion that an individual, whether or not the
> arrestee, is "dangerous" and might access the vehicle to
> "gain immediate control of weapons." <u>Id.</u>, at 1049, 103
> S.Ct. 3469 (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 21, 88 S.Ct.
> 1868, 20 L.Ed.2d 889 (1968)). If there is probable cause
> to believe a vehicle contains evidence of criminal activity,
> <u>United States v. Ross</u>, 456 U.S. 798, 820–821, 102 S.Ct.
> 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any
> area of the vehicle in which the evidence might be found.
> . . . Ross allows searches for evidence relevant to offenses
> other than the offense of arrest, and the scope of the search
> authorized is broader. Finally, there may be still other
> circumstances in which *safety or evidentiary interests*
> would justify a search. <u>Cf.</u> <u>Maryland v. Buie</u>, 494 U.S.
> 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)
> (holding that, incident to arrest, an officer may conduct a
> limited protective sweep of those areas of a house in which
> he reasonably suspects a dangerous person may be hiding).

<u>Id.</u> at 346-47 (emphasis added).  Thus, the Court concluded:  "These exceptions together ensure that officers may search a vehicle *when genuine safety or evidentiary concerns encountered during the arrest* of a vehicle's recent occupant justify a search. <u>Id.</u> at 347 [emphasis added].

Accordingly, it is apparent that, when the Court held that "another exception to the warrant requirement" could justify a search of an arrestee's vehicle, it was implicitly referring to the types of exceptions involving the types of concerns cited earlier in its opinion.  But broad-based vehicle inventory searches involve none of the "safety or evidentiary concerns" cited by <u>Gant</u>.  Thus, holding here that <u>Gant</u>

23

implicitly vitiated the vehicle inventory exception in the context of vehicular arrests would not be inconsistent with the Court's holding in that case.

## POINT II

**THE RECORD CONTAINS SUFFICIENT EVIDENCE FROM WHICH A REASONABLE JURY COULD FIND THAT DASILVA'S WARRANTLESS "INVENTORY" SEARCH OF BRYANT'S VEHICLE WAS UNREASONABLE AND, THUS, UNCONSTITUTIONAL.**

If the Court is unwilling to read and apply <u>Gant</u> as Bryant proposes and holds that the vehicle inventory search remains a valid exception to the warrant requirement, the issue of whether a valid vehicle inventory search occurred must still be resolved. Addressing this issue, the district court first noted that the question of which party bears the burden of proving (or disproving, as the case may be) the application and validity of the inventory exception is unresolved in this Circuit (SA-7). Indeed, the Second Circuit has ruled inconsistently on this question (<u>Id.</u>) (citing <u>Tirreno v. Mott</u>, 375 Fed.Appx. 140, 142 (2d Cir. 2010) (noting inconsistent holdings without resolving the issue)).

In one line of cases, this Court has placed the burden of proving the search was unreasonable on plaintiff. See <u>Tierney v. Davidson</u>, 133 F.3d 189, 196 (2d Cir. 1998); <u>Ruggiero v. Krzeminski</u>, 928 F.2d 558, 563 (2d Cir. 1991); <u>See also</u>, <u>Carroll v. County of Monroe</u>, 712 F.3d 649, 651 (2d Cir. 2013) (citing <u>Ruggiero</u> without

24

further explanation). In another line of cases, it has placed the burden of proving the reasonableness of the search on the defendant. See Anobile v. Pelligrino, 303 F.3d 107, 124 (2d Cir. 2002); McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997).

Ultimately, the district court did not reconcile this inconsistency because it concluded that Dasilva was entitled to summary judgment under either standard (SA-8). But the court erred because, under either standard, there *is* sufficient evidence from which a reasonable jury could find Dasilva's warrantless inventory search unreasonable. Thus, the Court need not reach the ultimate issue of which party bears the burden of proof to resolve the present summary judgment motion.[3]

Vehicle inventory searches will be upheld only when they are conducted pursuant to standardized police procedures, which are designed to achieve the community caretaking rationale justifying the exception. See Wells, 495 U.S. at 4. Thus, an inventory search may not be conducted "in bad faith or for the sole purpose of investigation." See Bertine, 479 U.S. at 372. Moreover, the search "must not be a ruse for a general rummaging in order to discover incriminating evidence." See Wells at 4.

---

[3] In any event, should the Court reach the burden of proof issue, it should find that the burden rests with the defendant to provide the reasonableness of the search. Indeed, once the plaintiff has established the defendant lacked a warrant, he has demonstrated that the search is *per se* unreasonable. Accordingly, the defendant's assertion of an exception to the warrant requirement should be treated as an affirmative defense, which the defendant must prove by a preponderance of the evidence.

Elaborating on the standards set forth in <u>Opperman</u>, <u>Bertine</u> and <u>Wells</u>, the New York Court of Appeals explained:

> [A]n inventory search should be conducted pursuant to an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably. . . .  The procedure must be standardized so as to limit the discretion of the officer in the field.  While incriminating evidence may be a consequence of an inventory search, it should not be its purpose.

<u>People v. Johnson</u>, 1 N.Y.3d 252, 256 (2003).  Moreover, "when determining the validity of an inventory search, two elements must be examined:  first, the relationship between the search procedure adopted and the governmental objectives that justify the intrusion and, second, the adequacy of the controls on the officer's discretion." <u>People v. Gomez</u>, 13 N.Y.3d 6, 10 (2003).

Finally, "courts may take judicial notice of the standardized procedure.  While procedures need not be offered into evidence, a description of what the procedure requires must be proffered." <u>Id.</u> at 11.

In this case, in finding Dasilva's search valid under either burden of proof, the district court relied entirely on the combination of Dasilva's conclusory Affirmation submitted in support of his motion for summary judgment and the Vehicle Impound and Inventory Record (the "Inventory Record") he claims to have produced as a result of his search of Bryant's vehicle (SA-8-9).  That Affirmation reads, in pertinent part:

> On December 20, 2010, I conducted a vehicle inventory of
> plaintiff's car. Pursuant to standard policy, plaintiff's car
> could not be left on the side of I84, and thus I needed to
> inventory the car contents prior to it being towed and
> impounded. Pursuant to policy, the inventory I conducted
> was limited to the areas of the vehicle listed on the Vehicle
> Impound and Inventory Record document that were
> applicable to this situation, which are locations where in
> general valuables can be stored. Additionally, pursuant to
> policy, I drafted a Vehicle Impound and Inventory Record
> while conducting the inventory. . . . It was during this
> inventory that I located the non-original prescription pill
> bottle with the narcotics.

(SA-8; JA-33).

This Affirmation falls short of the standard set forth in Bertine and Wells and

elaborated upon by the New York Court of Appeals in Johnson and Gomez.

Although Dasilva states in a conclusory fashion that he conducted the search

"pursuant to policy," he provides no specifics on what the procedure actually

requires. See Gomez, 13 N.Y.3d at 11. Further, he provides no details from which

the inference could be drawn that the alleged policy is designed to achieve the policy

justifications underlying such searches or in a manner sufficient to limit his

discretion.

To be sure, Dasilva asserts that he limited his search to the areas listed on the

Inventory Record, which might suggest the policy was aimed at securing valuables

and limited his discretion. But fact questions remain. Critically, Dasilva's

Affirmation provides no explanation whatsoever about what the policy says about

opening containers found in the vehicle; yet he opened the pill container he found in the vehicle. Cf. Wells, 495 U.S. at 4 (holding warrantless search of a closed container found during purported vehicle inventory unconstitutional where police agency had no policy with respect to closed containers and, thus, the search was not sufficiently regulated).

Moreover, Dasilva's description of valuables on the Inventory Record lists a "wireless network modem" found "in a dash cubby" (JA-34). Yet "dash cubby" is not an interior location listed on the record, which includes only front seat, rears seat, glove box and console (Id.).

Finally, even assuming that Bryant carries the burden of proof, he submitted sufficient evidence in opposition to Dasilva's motion sufficient to withstand summary judgment, especially when coupled with the deficiencies in Dasilva's evidence as just noted. Specifically, Bryant submitted a "Search Summary," completed by Dasilva, which describes his search of Bryant's vehicle in which he found the pill bottle and prescription medications (JA 143). That document notes that the "basis for search" was "probable cause." Moreover, the document cites the date and time of the traffic stop as 12/21/10 at 10:15 a.m. (Id.), when, in fact, it is undisputed that the stop occurred on 12/20/10 at 4:10pm. This error suggests, perhaps, that the document was created the following morning and automatically filled in the date and time that it was being created. Thus, a reasonable jury could

conclude that Dasilva actually completed his paperwork the next morning, not roadside as he testified, and that the date and time cited on the Inventory Record is false. This would further call in to question the validity of his alleged "inventory."

Ultimately, there is sufficient evidence in this record from which a reasonable jury could find that Dasilva's alleged inventory search was invalid under the applicable constitutional standards and, thus, constituted an unreasonable invasion of Bryant's privacy in violation of the Fourth Amendment.

## CONCLUSION

For all of the foregoing reasons, the Court should, respectfully, reverse the district court's judgment and remand the matter for trial.

Dated:    Goshen, New York
          February 10, 2014          Respectfully submitted,

                                     SUSSMAN AND WATKINS
                                     *Attorneys for Plaintiff-Appellant*

                                     By: _____
                                         Michael H. Sussman, Esq.
                                         SUSSMAN AND WATKINS
                                         P.O. Box 1005
                                         1 Railroad Avenue, Ste. 3
                                         Goshen, New York 10924
                                         (845) 294-3991

TO:   ERIC T. SCHNEIDERMAN
      NEW YORK STATE ATTORNEY GENERAL
      By: Valeria Figueredo
      *Attorneys for Defendant-Appellee Anthony Dasilva*
      120 Broadway, 25th Floor
      New York, New York 10271

29

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,884 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

Dated:    Goshen, NY
          February 10, 2014

                              _____
                              MICHAEL H. SUSSMAN

# SPECIAL APPENDIX

## SPECIAL APPENDIX – TABLE OF CONTENTS

Opinion and Order (November 6, 2013)…………………………………SA-1-11

Judgment (November 7, 2013)………………………………………SA-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

WAYNE BRYANT,

                Plaintiff,

       - against -

VILLAGE OF GREENWOOD LAKE and
ANTHONY DASILVA,

                Defendants.

---------------------------------------------------------------x

**OPINION AND ORDER**

11-cv-7788 (ER)

Ramos, D.J.:

      Plaintiff Wayne Bryant ("Plaintiff" or "Bryant") brought this action pursuant to 42

U.S.C. § 1983 ("Section 1983"), alleging that New York State Trooper Anthony Dasilva

("Defendant" or "Dasilva") deprived him of his Fourth Amendment right to be free from

unreasonable searches and seizures.[1]  Doc. 1.  Defendant has moved for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Doc. 18.

      For the reasons discussed below, Defendant's motion for summary judgment is

GRANTED.

**I.  Factual Background**

      The events giving rise to the instant action took place at approximately 4:00 p.m. on

December 20, 2010, when Defendant pulled Plaintiff over for a seatbelt violation on Interstate 84

---

[1] Plaintiff's Complaint also stated a cause of action for negligence against the Village of Greenwood Lake.  Doc. 1.
That claim subsequently settled, and the suit against the Village was dismissed, leaving the Fourth Amendment
claim against Dasilva as the sole cause of action in the case.  Doc. 13.

1

in Montgomery, New York. Dasilva Dep. 25:15-26:6[2]; Knudsen Decl. Ex. B, at Bryant 1-2.

Upon running Plaintiff's license, Defendant learned that the Village of Greenwood Lake has

issued a bench warrant for Plaintiff.[3]  *Id.* at 35:25-36:20, 37:20-38:4.  The warrant was active and

thus required Defendant to take Plaintiff into custody.  *Id.* at 36:8-36:25.  Defendant called for a

tow truck before returning to Plaintiff's car, informing him of the outstanding warrant, and

placing him in custody.  *Id.* at 51:18-52:4, 59:9-60:13, 63:4-64:2.  While waiting for the tow truck

to arrive, Defendant began to inventory the contents of Plaintiff's car.  Bryant Dep. 42:22-42:25,

58:4-58:7[4]; Desilva Dep. 56:11-57:6, 66:24-67-4.  Defendant acknowledges that Plaintiff was

secured in the patrol car during this time, that Defendant did not have a search warrant, that he

did not ask Plaintiff for consent to search the vehicle, and that he did not suspect that there was

any ongoing criminal activity.  Desilva Dep. 67:5-69:21, 75:6-76:3.

The inventory extended to the front seat, rear seat, glove compartment, center console

and trunk.  Bryant Dep. 39:3-39:14, Desilva Dep. 56:11-57:18; Knudsen Decl. Ex. A.  There was

a prescription pill bottle in the center console, which was not labeled with Plaintiff's name.

Bryant Dep. 47:17-48:22, 49:20-50:21; Desilva Dep. 76:4-76:8; Knudsen Decl. Ex. A.  The

bottle contained codeine and hydrocodone.  Bryant Dep. 48:7-48:8; Knudsen Decl. Ex. A.

Following the inventory, Plaintiff's car was impounded.  Bryant Dep. 57:22-58:11.  Defendant

---

[2] Excerpts from Dasilva's deposition are attached as Exhibit D to the Declaration of John Knudsen (Doc. 20) and as Exhibit 1 to Michael H. Sussman's Affirmation in Opposition to Defendant's Motion for Summary Judgment (Doc. 24).  The page references appearing in this opinion refer to the original pagination of the deposition transcript.

[3] The circumstances that gave rise to the bench warrant were the subject of the now-settled cause of action against the Village of Greenwood Lake.  As the basis for the warrant is not relevant to the Fourth Amendment claim against Dasilva, those details will not be discussed here.

[4] Excerpts from Bryant's deposition are attached as Exhibit C to the Declaration of John Knudsen (Doc. 20) and as Exhibit 2 to Michael H. Sussman's Affirmation in Opposition to Defendant's Motion for Summary Judgment (Doc. 24).  The page references appearing in this opinion refer to the original pagination of the deposition transcript.

2

drove Plaintiff to the State Police barracks, where he issued Plaintiff a traffic ticket for the
seatbelt violation, along with appearance tickets for criminal possession of a controlled substance
in the seventh degree and possession of a controlled substance in a non-original container.
Bryant Dep. 67:2-69:16; Desilva Dep. 80:6-80:11; Knudsen Decl. Ex. B, at Bryant 8, 9, 12.
Plaintiff was then transferred to Greenwood Lake Police Department custody. Desilva Dep.
80:6-80:11.

## II.      Legal Standard on Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine
dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the
evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno
v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint
Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might
affect the outcome of the litigation under the governing law. *Id.*

The party moving for summary judgment is first responsible for demonstrating the
absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986). If the burden of proof at trial would fall on the movant, that party's "own submissions in
support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B.
Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). Conversely, "[w]hen the burden of
proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point
to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."
*Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*,
477 U.S. at 322-23). If the moving party meets its burden, "the nonmoving party must come
forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

3

avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation mark omitted). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**III.    Discussion**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see McCardle v. Haddad*,

4

131 F.3d 43, 48-49 (2d Cir. 1997) (cataloguing the various exceptions to the warrant

requirement).

In the present case, the parties' dispute centers on the interplay between two of these

exceptions:  the exception for inventory searches of an arrestee's property, and the exception for

searches incident to arrest.  Defendant seeks summary judgment primarily on the grounds that

his search of Plaintiffs' car was constitutional under the inventory search exception.  Def.'s

Mem. of Law in Supp. 4-7.  In opposing the motion, Plaintiff characterizes the search as one

undertaken incident to Plaintiff's arrest.  Pl.'s Mem. of Law in Opp'n 9.  Plaintiff argues that the

Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), effectively vitiates the

inventory search exception to the extent it had previously been applied to vehicle searches.  *Id.* at

9-10.

The Court rejects Plaintiff's reading of *Gant* and finds that the inventory search exception

continues to apply to vehicle searches.  *Gant* was focused exclusively on the exception for

warrantless searches incident to arrest.  The Supreme Court held that the search-incident-to-

arrest exception applies to vehicle searches only if the passenger compartment of the vehicle is

within the arrestee's "reaching distance" at the time of the search, or if it is reasonable for the

officer to believe that the vehicle contains evidence of the offense that gave rise to the arrest.

*Gant*, 556 U.S. at 351.  Rather than purporting to impose these restrictions on all warrantless

vehicle searches, however, the holding explicitly acknowledges the possibility that alternative

exceptions may still apply in a given case.  *Id.* ("When these justifications are absent, a search of

an arrestee's vehicle will be unreasonable unless police obtain a warrant *or show that another*

*exception to the warrant requirement applies.*" (emphasis added)).  As Defendant correctly

5

observes, there is nothing in the opinion that speaks to, let alone reverses, existing case law related to those other exceptions.

Moreover, the Second Circuit has continued to analyze and uphold warrantless vehicle searches under the inventory search exception, doing so in an opinion that specifically addressed both inventory searches and searches incident to arrest. *United States v. Henderson*, 439 F. App'x 56 (2d Cir. 2011). Once again, there is no language suggesting that the requirements for the former were somehow altered by or rendered dependent upon the requirements for the latter. The Court of Appeals' decision in *Henderson* accords with case law from other Circuits. *See United States v. Polanco*, 634 F.3d 39, 42 (1st Cir. 2011) (confirming that the "auto exception" to the warrant requirement still applies in the wake of *Gant*, and citing cases from the Fourth, Fifth, Seventh, Eighth and District of Columbia Circuits to demonstrate agreement on this point); *United States v. Martin*, 360 F. App'x 686, 689 (7th Cir. 2010) (distinguishing *Gant* on the grounds that "its ban on warrantless car searches applies to only one exception to the Fourth Amendment's warrant requirement: the search-incident-to-arrest exception"). In ruling on the present motion, the Court must therefore determine whether Defendant's actions constituted a valid inventory search of Plaintiff's vehicle.

The inventory search exception arises out of the need "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Inventory searches will be upheld in situations where the officers "were following standardized procedures" and were not acting "in bad faith or for the sole purpose of investigation." *Id.* An otherwise-reasonable inventory search will not be rendered unreasonable merely because an officer is motivated in part by investigatory purposes or by the expectation that the search will

6

yield evidence. *See United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) ("When officers,

following standardized inventory procedures, seize, impound, and search a car in circumstances

that suggest a probability of discovering criminal evidence, the officers will inevitably be

motivated in part by criminal investigative objectives.  Such motivation, however, cannot

reasonably disqualify an inventory search that is performed under standardized procedures for

legitimate custodial purposes.").  That said, the inventory search "must not be a ruse for a

general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4

(1990).

The existence of a standardized inventory procedure can be demonstrated either via

reference to written rules or via testimony describing standard practices. *United States v.*

*Thompson*, 29 F.3d 62, 65 (2d Cir. 1994); *United States v. Flores*, No. 99 CR. 1110 RWS, 2000

WL 1597880, at *2 (S.D.N.Y. Oct. 27, 2000), *modified on reconsideration*, 122 F. Supp. 2d 491

(S.D.N.Y. 2000); *United States v. Ford*, No. 96 CR. 672 (LBS), 1997 WL 538813, at *7

(S.D.N.Y. Aug. 29, 1997).  The procedures themselves do not need to be in written form. *United*

*States v. Palacios*, 957 F. Supp. 50, 53 (S.D.N.Y. 1997); *see United States v. Mendez*, 315 F.3d

132, 138 (2d Cir. 2002) ("The record amply supports the district court's conclusion that the

Hartford Police Department had a consistent, if unwritten, inventory search policy.").

The Second Circuit has spoken inconsistently on the question of which party bears the

burden of proving (or disproving) that an exception to the warrant requirement applies in the

context of Section 1983 actions. *See Tirreno v. Mott*, 375 F. App'x 140, 142 (2d Cir. 2010)

(discussing, but declining to resolve, the "apparent tension" in Second Circuit precedents).

Under one line of cases, the presumptive unreasonableness of warrantless searches imposes on

the defendant a duty to produce evidence of an exception to the warrant requirement, but the

7

ultimate burden of proof remains on the plaintiff. *See Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998); *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991). Under the other, the presumption of unreasonableness serves to shift the burden of proof, and the defendant is required to demonstrate that the search was valid under one of the exceptions. *See Anobile v. Pelligrino*, 303 F.3d 107, 124 (2d Cir. 2002); *McCardle*, 131 F.3d at 48. This Court has adopted both approaches in the past. *Compare MacWade v. Kelly*, No. 05CIV6921RMBFM, 2005 WL 3338573, at *16 n.28 (S.D.N.Y. Dec. 7, 2005) (applying *Ruggiero* in the context of the "special needs" exception), *aff'd*, 460 F.3d 260 (2d Cir. 2006), *with United States v. James*, No. 10 CR 1293 RPP, 2011 WL 6306721, at *5 (S.D.N.Y. Dec. 16, 2011) ("It is undisputed that the police did not have a warrant to search the van, and thus the Government must demonstrate that the search was permissible under one of the 'well-delineated exceptions' to the warrant requirement." (quoting *Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973))), *aff'd*, 520 F. App'x 41 (2d Cir. 2013), *cert. denied*, No. 13-5289, 2013 WL 3489846 (U.S. Oct. 7, 2013).

In light of the record before the Court, Defendant is entitled to summary judgment under either theory. In support of his motion, Desilva has provided a signed affirmation that reads, in pertinent part:

> On December 20, 2010, I conducted a vehicle inventory of plaintiff's car. Pursuant to standard policy, plaintiff's car could not be left on the side of I84, and thus I needed to inventory the car contents prior to it being towed and impounded. Pursuant to policy, the inventory I conducted was limited to areas of the vehicle listed on the Vehicle Impound and Inventory Record document that were applicable to this situation, which are locations where in general valuables can be stored. Additionally, pursuant to policy, I drafted a Vehicle Impound and Inventory Record while conducting the inventory. A copy of the Vehicle Impound and Inventory Record is attached to this Affirmation as Bryant 16. It was during this inventory that I located the non-original prescription pill bottle with narcotics.

Knudsen Decl. Ex. A.

8

The "Vehicle Impound and Inventory Record" to which Desilva refers is a one-page form with that heading printed across the top. *Id.* The form requests numerous pieces of information, including the name of the police officer requesting the tow, the identity of the tow service and operator, the time the tow truck was requested, the time the truck arrived and departed, and the locations from and to which the vehicle was towed. *Id.* It also collects information about the impounded vehicle and its driver, including whether the vehicle had been damaged. *Id.* The bottom portion of the form is labeled "Inventory." *Id.* This section asks for information about the location at which the inventory was conducted, as well as the time the inventory began and the time it ended. *Id.* It then lists interior and exterior areas of the car—front seat, rear seat, glove box, console, trunk and "other storage area"—along with boxes for the officer to check when those areas are searched. *Id.* This portion of the form is accompanied by two larger blank boxes that call for descriptions of any valuables found in the interior and exterior areas searched. *Id.*

The evidence makes plain that Defendant conducted a vehicle inventory of Plaintiff's car. Plaintiff was in custody and his car was on the side of the interstate, thus necessitating that it be impounded. Defendant documented the incident on a standardized form designed for such situations. The information collected on the form created a record of the vehicle's contents and condition, thus furthering the property-protection and liability-reduction purposes that the inventory search exception was designed of serve. Plaintiff, in advancing his *Gant*-based theory of the case, never challenges Defendant's assertion that he conducted a vehicle inventory. Instead, Plaintiff attempts to dismiss Defendant's characterization by calling it "a distinction without a difference." Pl.'s

9

Mem. of Law in Opp'n 9. Plaintiff is mistaken on this point, since inventory searches remain a "well-delineated exception" to the warrant requirement, separate and apart from any other exceptions that may or may not apply in a particular case. As long as Defendant's conduct satisfies the requirements imposed on inventory searches, then those actions are reasonable under the Fourth Amendment.

Plaintiff does not offer any evidence to challenge the statements contained in Defendant's affirmation. Indeed, rather than addressing the requirements of the inventory search exception at all, Plaintiff's case relies solely on his misreading of *Gant*. Desilva's uncontroverted testimony, accompanied by the "Vehicle Impound and Inventory Record," thus serves to establish that both his decision to search the vehicle and the procedure he followed in conducting it were dictated by standard police policy. The areas of the car that Defendant searched correspond to those areas listed on the "Vehicle Impound and Inventory Record." As discussed above, it is not necessary that Desilva produce a formal, written set of procedures; his testimony as to standard practice is sufficient. Moreover, nothing in the record undermines Defendant's claim that his actions were driven by the need to remove the car from the side of the highway. There is certainly no basis to conclude that he was motived *solely* by investigatory purposes.

Even assuming, *arguendo*, that defendants in civil actions bear the burden of proof as to the constitutionality of an inventory search, Defendant has satisfied that burden in this case. The Court therefore finds that Defendant's warrantless search of Plaintiff's car was reasonable under the Fourth Amendment, and Plaintiff's claim must fail as a matter of law.

10

## IV.    Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is

GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion (Doc. 18)

and to close this case.

It is SO ORDERED.

Dated:    November 6, 2013
          New York, New York

                                            _____
                                            Edgardo Ramos, U.S.D.J.

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

WAYNE BRYANT,

                              Plaintiff,

              -against-

VILLAGE OF GREENWOOD LAKE and
ANTHONY DASILVA,
                              Defendants.
--------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 11/7/2013

11 CIVIL 7788 (ER)

**JUDGMENT**

        Defendants having moved for summary judgment pursuant to Fed. R. Civ. P. 56, and the

matter having come before the Honorable Edgardo Ramos, United States District Judge, and the

Court, on November 6, 2013, having rendered its Opinion and Order granting Defendants' motion

for summary judgment, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion and Order dated November 6, 2013, Defendants' motion for summary judgment is

granted; accordingly, the case is closed.

**Dated:**  New York, New York
        November 7, 2013

                                        **RUBY J. KRAJICK**
                                        Clerk of Court

                              BY: _____
                                        Deputy Clerk

**THIS DOCUMENT** WAS ENTERED
**ON THE DOCKET ON** _____